**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 23-2121**

─────────

FIRST KUWAITI GENERAL TRADING & CONTRACTING W.L.L.,

> Movant - Appellant,

v.

KELLOGG BROWN & ROOT INTERNATIONAL, INCORPORATED,

> Respondent - Appellee.

─────────

Appeal from the United States District Court for the Eastern District of Virginia at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:23-mc-00001-AJT-WEF)

─────────

Argued:  November 1, 2024                         Decided:  June 17, 2025

─────────

Before GREGORY, THACKER and BERNER, Circuit Judges.

─────────

Affirmed by published opinion. Judge Berner wrote the opinion, in which Judge Gregory and Judge Thacker joined.

─────────

**ARGUED:**  Robert Kelsey Kry, MOLOLAMKEN LLP, Washington, D.C., for Appellant. Douglas Leo Patin, BRADLEY ARANT BOULT CUMMINGS LLP, Washington, D.C., for Appellee. **ON BRIEF:**  Robert Y. Chen, MOLOLAMKEN LLP, Washington, D.C., for Appellant. Jennifer Morrison Ersin, Washington, D.C., R. Sumner Fortenberry, BRADLEY ARANT BOULT CUMMINGS LLP, Jackson, Mississippi; Nicholas A. Simms, PORTER HEDGES LLP, Houston, Texas, for Appellee.

─────────

BERNER, Circuit Judge:

This may be the final chapter in a dispute that began over twenty years ago. Following the September 11 attacks, Kellogg Brown & Root International (KBR) contracted with the United States Army to provide logistics support for American troops in Iraq and Kuwait. In the performance of this contract, KBR entered into several subcontracts with First Kuwaiti General Trading & Contracting W.L.L. (First Kuwaiti), including one to provide trailers for troops to use as living quarters in Iraq. First Kuwaiti incurred significant, unanticipated costs while performing this subcontract, and sought payment for these costs from KBR. That request and other disputes flowing from the subcontract between KBR and First Kuwaiti lay at the heart of this appeal.

In 2009, KBR and First Kuwaiti agreed to resolve these disputes through arbitration before the International Center for Dispute Resolution (ICDR). Following a hearing, an arbitral panel (the ICDR Panel) issued a final arbitration award denying First Kuwaiti's claim for payment and resolving all other remaining disputes. First Kuwaiti filed a request for changes to the award pursuant to Article 30, an ICDR rule that permits parties to seek limited review of final arbitration awards. The ICDR Panel rejected First Kuwaiti's request as essentially seeking reconsideration of its final award, thereby exceeding the scope of Article 30.

More than three months after the ICDR Panel issued its final award, First Kuwaiti filed a motion in federal district court seeking to have the award vacated. KBR opposed the motion as untimely and filed a cross-motion to confirm the award. Subsequently, First

2

Kuwaiti filed a motion asking the district court to award it prejudgment interest on two other claims unrelated to the damage to the trailers.

The district court denied First Kuwaiti's motion to vacate as untimely and granted KBR's motion to confirm the ICDR Panel's final award. In a subsequent order, the district court denied First Kuwaiti's request for prejudgment interest. First Kuwaiti appeals from both orders and we affirm.

## I.     Background

This appeal concerns disputes that arose out of a subcontract between First Kuwaiti, a foreign company based in Kuwait and Lebanon, and KBR, a domestic company incorporated in Delaware. The United States Army awarded KBR a logistics contract to provide material assistance to American troops in support of war efforts in Iraq and Kuwait. To carry out this contract, KBR entered into several subcontracts with First Kuwaiti. One of these subcontracts, Subcontract 11, required First Kuwaiti to provide thousands of trailers for U.S. troops to use as housing in Iraq. The agreed-upon cost of these trailers was nearly $81 million.

KBR and First Kuwaiti (the Parties) anticipated that the U.S. Army would provide escorts to protect First Kuwaiti's convoys as they transported the trailers across the border between Kuwait and Iraq. The U.S. Army failed to do so, however. As a result, First Kuwaiti was unable to deliver the trailers, and they became backed up at the border. Several of the trailers were damaged, while others were destroyed completely. First Kuwaiti sought an additional payment of $70 million from KBR to cover these unanticipated costs. First Kuwaiti and KBR entered into negotiations, ultimately agreeing that KBR would pay First

Kuwaiti an additional $48.75 million. KBR sought reimbursement from the U.S. Government for these expenses. KBR's reimbursement request went before the Defense Contract Audit Agency (DCMA) which conducted an audit and granted KBR's request in part, awarding $35 million in reimbursement.

Not long after the DCMA granted KBR's request in part, a former KBR contract administrator pled guilty to participating in an illegal kickback scheme relating to a government contract. The scheme also implicated a First Kuwaiti principal. Following this guilty plea, DCMA reopened its audit of KBR's request for reimbursement and, upon reconsideration, determined that First Kuwaiti's claim documentation for additional costs associated with its performance of Subcontract 11 was "not credible." J.A. 242. As a result, DCMA rescinded its prior decision granting KBR's request. KBR appealed DCMA's decision, first to the Armed Services Board of Contract Appeals (the Board) and then to the U.S. Court of Appeals for the Federal Circuit. Both the Board and the Federal Circuit affirmed DCMA's determination that KBR was not entitled to reimbursement for First Kuwaiti's claims of additional costs. *See Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366, 1374–75 (Fed. Cir. 2020).

There were other outstanding claims and disputes between the Parties as well. On January 19, 2009, KBR and First Kuwaiti agreed in writing to resolve their remaining disputes through arbitration before the ICDR (the Arbitration Agreement). The ICDR Panel had paused the arbitration proceedings while DCMA, the Board, and the Federal Circuit considered KBR's request for reimbursement. After the Federal Circuit ruled in 2020, the ICDR Panel held a hearing on all outstanding disputes between the Parties. The ICDR

Panel filed its final award (the Arbitration Award) on July 26, 2022. On the issue of payment to First Kuwaiti for excess costs incurred in connection with the provision of the trailers, the ICDR Panel ruled for KBR, concluding that the Federal Circuit's decision denying KBR's request for reimbursement was controlling. The ICDR Panel did not award First Kuwaiti prejudgment interest on the two stipulated settlements the Parties had entered into in 2009 and 2014.

First Kuwaiti and KBR, each dissatisfied with different aspects of the Arbitration Award, filed requests for correction of the award under Article 30 of the ICDR Rules. Article 30 permits a party to an arbitration to request that the arbitral tribunal "interpret [an] award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award." J.A. 751. Article 30 is designed to remedy minor errors, and it does not permit motions for reconsideration. *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 336 (2d Cir. 2010). First Kuwaiti's Article 30 request broadly contended that the panel erred on the issue of payment for excess costs. KBR's requested changes were more minor. KBR requested a clarification of the calculation of the statement of the net amount awarded and a request for certain offsets against the total amount of the award.

In a 23-page decision dated October 13, 2022, and delivered to the Parties on October 20, 2022, the ICDR Panel ruled on both Article 30 requests (the Decision on Article 30 Requests). The ICDR Panel dismissed First Kuwaiti's request for correction as beyond the scope of Article 30 review. The panel chastised First Kuwaiti for attempting to use Article 30 as a vehicle to seek reconsideration of the Arbitration Award and made clear

5

that the ICDR rules preclude the consideration of such a request. The ICDR Panel granted KBR's request to clarify the calculation of the net amount awarded to First Kuwaiti but also dismissed KBR's request for calculation of offsets as exceeding the scope of Article 30 review. Notably, in the Decision on Article 30 Requests, the ICDR Panel referred to the Arbitration Award issued on July 26, 2022, as the "final award." J.A. 144.

On January 5, 2023, First Kuwaiti filed a motion to vacate the Arbitration Award in the Federal District Court for the Eastern District of Virginia. KBR opposed First Kuwaiti's motion to vacate and cross filed a motion to confirm the award. In May 2023, the district court dismissed First Kuwaiti's motion to vacate as untimely and entered an order confirming the Arbitration Award. *First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, No. 1:23-MC-1, 2023 WL 3437813, at *7 (E.D. Va. May 12, 2023) (*First Kuwaiti* May 2023 Order).

After the district court issued this order, it ordered the Parties to meet and confer about certain unresolved issues. Perhaps unsurprisingly, the Parties were unable to reach agreement. First Kuwaiti filed a subsequent motion, asking the district court to award prejudgment interest on the Parties' 2009 and 2014 stipulations. The district court denied First Kuwaiti's request in September 2023. *First Kuwaiti Gen. Trading & Contracting W.L.L. v. Kellogg Brown & Root Int'l, Inc.*, No. 1:23-MC-1, 2023 WL 6221771, at *1 (E.D. Va. Sept. 22, 2023) (*First Kuwaiti* September 2023 Order). First Kuwaiti timely appealed from both orders of the district court.

## II.    Subject Matter Jurisdiction

Before reaching the merits, we must determine that we have jurisdiction to consider First Kuwaiti's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This appeal arises under the Federal Arbitration Act (FAA), which grants federal courts of appeals jurisdiction over district court orders confirming arbitration awards. 9 U.S.C. § 16 (a)(1)(D). Because the district court's orders confirming the arbitration award and denying prejudgment interest were final, we have jurisdiction to hear this appeal. 9 U.S.C. § 16; 28 U.S.C. § 1291.

## III.    Analysis

First Kuwaiti raises three issues on appeal: whether the district court erred in denying its motion to vacate the Arbitration Award; whether the district court lacked authority under the FAA to confirm the Arbitration Award; and, finally, whether the district court abused its discretion in denying First Kuwaiti's request for prejudgment interest. We address each issue in turn.

### A. Motion to Vacate the Arbitration Award

We review *de novo* a district court's decision on a motion to vacate an arbitration award. *Warfield v. Icon Advisers, Inc*, 26 F.4th 666, 669 (4th Cir. 2022). A district court may vacate an arbitration award only on very narrow grounds. 9 U.S.C. § 10(a). We need not decide whether such grounds exist here, however, because we agree with the district court that First Kuwaiti's motion to vacate was untimely filed.

7

The FAA requires that a "[n]otice of a motion to vacate, modify, or correct an award . . . be served upon the adverse party or his attorney within *three months* after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added) (FAA Section 12). If a party fails to file within this three-month statute of limitations, the motion to vacate must be dismissed. *Gonsalvez v. Celebrity Cruises Inc.,* 750 F.3d 1195, 1197 (11th Cir. 2013). Although the FAA does not define the term "award," this court has held that that the term refers to a final arbitration award. *See*, *e.g.*, *Norfolk S. Ry. Co. v. Sprint Commc'ns Co. L.P.*, 883 F.3d 417, 422–23 (4th Cir. 2018) (holding that an arbitration award is final if it resolves all the issues the parties presented to the arbitrators). The district court concluded that the Arbitration Award, filed and delivered to the Parties on July 26, 2022, was "final." Therefore, the district court determined that First Kuwaiti's motion to vacate was untimely because it was filed on January 5, 2023, over five months after the award was "filed or delivered."

First Kuwaiti argues that the district court erred because the Arbitration Award was not "final." Rather, First Kuwaiti contends that the three-month limitations period began to run—or started anew—on October 20, 2022, when the ICDR Panel delivered the Decision on Article 30 Requests. According to First Kuwaiti, the Decision on Article 30 Requests did not simply clarify the prior Arbitration Award. Instead, First Kuwaiti argues, it reopened prior issues and reached new issues not yet decided and should, therefore, be properly considered a "final" award for purposes of the FAA Section 12 statute of limitations. Because its motion to vacate was filed within three months of that decision,

8

First Kuwaiti contends that its motion was timely and should be considered (and granted) on the merits.

We reject this argument and agree with the district court that the Arbitration Award was final. Several factors lead to this conclusion. To begin, the ICDR Panel titled the Arbitration Award "FINAL AWARD." J.A. 47. The Arbitration Award makes clear the panel's intent that its decision be final by stating that it was deciding all "the matters that remain in this long-running arbitration of the many consolidated claims and counterclaims." J.A. 51. The Arbitration Award also invokes the Arbitration Agreement, which requires the Parties to resolve all of their disputes through final and binding arbitration.

The Decision on Article 30 Requests did not call into question this finality.[1] That decision went no further than to clarify the manner in which the damages were calculated in the Arbitration Award. The Decision on Article 30 Requests reiterated that all claims between the Parties had been decided by the Arbitration Award, calling that award "final" and referring to First Kuwaiti's Article 30 request as a "post-award" application. J.A. 144. Because we conclude that the Arbitration Award was "final," the FAA Section 12 statute of limitations began to run when the award was delivered on July 26, 2022, and First Kuwaiti's motion to vacate—filed more than three months later—was untimely.

---

[1] Our opinion should not be read to hold that an arbitration order in response to an ICDR Article 30 request could never be considered an "award" for purposes of FAA Section 12. We simply hold that under the facts of this case, it did not.

9

B.    Motion to Confirm the Arbitration Award

First Kuwaiti also appeals the district court order granting KBR's motion to confirm the Arbitration Award. First Kuwaiti argues that the district court lacked authority to confirm because the Arbitration Award did not expressly call for judicial confirmation.[2] We review a district court order confirming an arbitration award *de novo*. *Williamson Farm v. Diversified Crop Ins. Servs.*, 917 F.3d 247, 253 (4th Cir. 2019).

Two chapters of the FAA govern confirmation of arbitration awards, Chapter One and Chapter Two. 9 U.S.C. §§ 9, 207. Chapter One, which is the exclusive avenue when all of the parties to the arbitration are domestic, requires—among other things—that the parties to the arbitration have consented to judicial confirmation. 9 U.S.C. § 9. If the requirements of Chapter One are met, then the district court must confirm the award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

When at least one party to an arbitration is a foreign party, parties may seek judicial confirmation under FAA Chapter Two. *See* 9 U.S.C. § 202. Chapter Two's requirements are less stringent than those contained in Chapter One. Relevant here, Chapter Two contains no requirement that parties have consented to judicial confirmation. *See Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436 (2d Cir. 2004) ("[Chapter Two] does

---

[2] First Kuwaiti's contention that the district court lacked jurisdiction to confirm the award is particularly ironic given that just three months after the district court issued its order confirming the award, First Kuwaiti filed its own motion to confirm prior arbitration awards relying upon both Chapters One and Two of the FAA. The doctrine of judicial estoppel undermines First Kuwaiti's position. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (holding that judicial estoppel generally prevents parties from asserting inconsistent claims in subsequent proceedings).

not in any way condition confirmation on express or implicit consent."). Chapter Two requires a district court to confirm an arbitration award unless it determines that one of a narrow list of grounds for refusal or deferral exists. 9 U.S.C. § 207; *see Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307–08 (3d Cir. 2006), *as amended on reh'g*, (Sept. 28, 2006).

Here, First Kuwaiti is a foreign party. First Kuwaiti does not dispute that the requirements of Chapter Two were met, nor does it contend that there exist grounds for refusal or deferral under that chapter. First Kuwaiti's argument that the Parties did not consent to judicial confirmation is, therefore, irrelevant. Because the arbitration involved a foreign party, FAA Chapter Two clearly applies and judicial confirmation was warranted.[3]

## C.      Prejudgment Interest

Finally, First Kuwaiti contends that the district court abused its discretion by declining to award prejudgment interest on the 2009 and 2014 stipulations. If awarded, that interest could have exceeded $28 million. Although a federal court may not overturn or modify an arbitration award of pre- or post-judgment interest simply because it disagrees

---

[3] KBR moved for confirmation of the Arbitration Award under FAA Chapter One, and thus the district court analyzed the request under the requirements of that Chapter. It concluded that the Parties had sufficiently demonstrated their intent to have the award judicially enforced. *First Kuwaiti* May 2023 Order at *6. Because we conclude that judicial confirmation was warranted under FAA Chapter Two, however, we need not reach the question of whether confirmation under Chapter One was appropriate. *See Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003) (stating that the court may affirm on any ground appearing in the record, including theories upon which the district court did not rely).

11

with the outcome, a district court has discretion to award such interest when an award is silent. *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 881 (D.C. Cir. 2021). If an arbitral tribunal has denied a request for interest, a district court may not grant such a request. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1103 (9th Cir. 2011). We review a district court's damages determination, including whether to award prejudgment interest, under the abuse of discretion standard. *Mary Helen Coal Corp. v. Hudson*, 235 F.3d 207, 210–11 (4th Cir. 2000). "A district court abuses its discretion 'by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law.'" *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013) (internal citation omitted).

The Parties disagree as to whether the Arbitration Award resolved the issue of whether First Kuwaiti was entitled to prejudgment interest on the 2009 and 2014 stipulations. KBR contends that the issue was effectively denied when the ICDR Panel considered all outstanding issues in dispute, this among them, and denied all other relief. If this were true, then the district court would lack discretion to award prejudgment interest. First Kuwaiti contends that the ICDR Panel did not reach the issue of prejudgment interest and, therefore, the district court had discretion to do so. The district court concluded that, regardless of whether the Arbitration Award reached the question, prejudgment interest was not warranted. We affirm.

In denying First Kuwaiti's request, the district court carefully reviewed the 2009 and 2014 stipulations. The district court first looked to the text of the stipulations and noted that neither explicitly provided for the payment of prejudgment interest. *First Kuwaiti*

12

September 2023 Order at *6. The district court then evaluated the substance and circumstances of the stipulations and concluded that KBR would not have agreed to enter into the stipulations had they required payment of prejudgment interest. *Id.* The district court concluded that the Parties did not agree to pay prejudgment interest and would not have entered into the 2009 or the 2014 stipulations had they known such interest would be judicially imposed. The district court was similarly unpersuaded by First Kuwaiti's equitable arguments and accordingly, denied First Kuwaiti's request.

We agree with the district court that it is not necessary to reach the question of whether the Arbitration Award addressed the question of prejudgment interest on the 2009 and 2014 stipulations. Because the district court's findings of fact were not clearly erroneous and the district court properly applied the relevant law, we conclude that the district court did not abuse its discretion in denying First Kuwaiti's request for prejudgment interest.

## IV. Conclusion

For the reasons set forth above, we affirm. First Kuwaiti's motion to vacate was not timely filed. The district court properly exercised its authority to confirm the arbitration award. The district court's denial of prejudgment interest was not an abuse of discretion.

*AFFIRMED*

13